Thank you, Your Honors. Eric Anderson on behalf of Appellants. May I reserve some time for rebuttal to argument? We won't hold you too strictly to the time limit. Okay. Thank you. We'll give you whatever time you need for rebuttal within reason. Thank you, Your Honors. May it please the Court, I have a few concerns about the Court's understanding of what the case is and what the case is not, after going through the briefs. It's important for the Court to remember that this case is not about sex education. This case is not an Establishment Clause case. This case is not a Free Exercise Clause case. This case is not about the parents attempting to pick and choose what curriculum their children are exposed to. This case is about privacy rights. This case is about the Meyer-Pierce right that the Supreme Court described back in the 1920s. This case is about the right of the parents to control when and how their children are exposed to sexually explicit material by a court. The important thing for the Court to understand is the nature of that right. That right will inform the Court's decision about how to evaluate the State's action. It's a fundamental right. It has been since the beginning, and it continues to be today. There's language in the Meyer and Pierce cases that seems ambiguous about that, but the Washington v. Glucksberg case makes it very clear that substantive due process rights and privacy rights are both fundamental, and they require strict scrutiny analysis. Once the Court understands that, the only other question before it is going to be to determine whether the State's action infringes upon that right or not. It's very clear that the State does infringe on the right because the State is giving a sexually explicit, psychologically intimate test to 8-year-olds. 8-year-olds don't respond to sexual questions the same way that adults do. They aren't armed with the same level of experience. Their bodies just are not the same. They have a visceral reaction to sexually explicit material in a way that we as adults do not. And just like in an evidence case, when bad evidence gets in front of a jury, you can't unring that bell. You can't restore innocence to these children. That's why we're here today. That's what the right is all about. Why did the State do this? We're here on a 12b-6 motion, so you have to take the allegations in the complaint at face value. And what we've got in the complaint is that this happened to assist a master's candidate in performing research for her thesis. This is not a compelling State interest. And it is certainly not narrowly tailored to fulfill any even legitimate State interest should the Court decide to use even a rational basis test. It's important for the Court to understand also that you agree that if this were part of the school curriculum, you would not have a constitutional violation. That's correct, Your Honor. And the reason is that the remedy that we're asking for would be part of the California statutory scheme. California statutes for sex education fulfill the constitutional rights of the parents to control the education and upbringing of their children. And there's two parts to the statutory scheme that make that happen. Well, whether the State, whether the school complied or didn't comply with the California statute, if part of this were a sex education course in the school, part of its curriculum, you would not be claiming there's a constitutional violation. That's correct, Your Honor. Your claim is based on the fact that this is sort of an extracurricular activity. It's a non-curricular activity. A non-curricular activity. There is no educational purpose whatsoever to this activity. The children didn't learn anything from this activity. Well, they probably did learn something from this activity, but that wasn't the intent. The reason that sex education survives the Fourteenth Amendment is because it complies with advance notice. Let me ask you this. Let's assume for the moment, and I understand the status of the case at the moment, but let's assume we were later on in a case and the school conducted these tests for reasons of it to such as improving its ability to deal with the fears and problems of its students. So let's assume it was there was a valid educational or pedagogical purpose to the to the testing. Then where would we be? Then we would be conducting a strict scrutiny analysis to determine whether that pedagogical purpose is a compelling State interest or not. We are dealing with a fundamental right here. If the State provides advance notice and a meaningful opportunity for parents to opt their children out of survey, then it survives that analysis. As we cut a bit more to the chase on this, it strikes me that your claims fundamentally are damage claims. I know you have a cause of action for declaratory relief and you've asked for injunctive relief, but your pleadings don't necessarily relate to that as I read them. How do you get around the 11th Amendment in this case? The 11th Amendment, we've had a 1983 action in this case. Right. And federal court is the place where you bring a 1983 claim. Correct. We have case law that says the school district is immune in California under the funding scheme. We are also bringing actions against the individuals. Individual claims are not preempted by the 11th Amendment, even though they're acting debatably under color of State power. Well, they have to be under color of State power for you to get in under 1983 to begin with. Right. But it seems to me you have some difficulties. Well, let's parse it back. You've got some problems with immunity in California. You have some problems with qualified immunity in the fact that there at least doesn't appear to be a case that clearly defines this right to this level. Not to this level of specificity. I agree, Your Honor. So if we accept your premise that the right attaches, that there is such a right that would cover the situation, how can we say it's clearly established to the point of a survey, when a distribution of a survey at school would be encompassed by the right? Aside from the Meyer-Pierce right dating back more than 80 years from today, there's a comprehensive set of statutes, both at the state and the federal level, that describe when, how, and in what manner schools may expose children to this sort of material. And there we are talking about sex education. And educators are charged with knowing and do know these statutes. They do know that you're supposed to send out notice to parents beforehand before you do sex education. This is not a big leap from that. No, but that's statutory and not constitutional law. What's your best case that would, if we surveyed the cases available at the time, that would indicate that the fundamental right you advocate would attach to this situation? That would probably be Alfonso v. Fernandez, the New York State case that I mentioned in the briefs. And that's a case that most clearly and most correctly draws the line between state action as to facilitating something in a non-curricular fashion versus curriculum. As you'll recall from reading the case, the Court in that case permitted the sex education program to go forward, despite the objections of the parents, but enjoined the distribution of condoms to the high school children. And that the Court correctly drew the line there between a curricular activity, which was the sex education, and a non-curricular activity, which was the condom distribution. I'm familiar with the case, obviously, from reading the briefs. But how does that get you to a right that's clearly established? Let me give you another example. Hamlin v. Berger, which is a case that went up to the United States Supreme Court, had several cases that were right on point out of different circuits. And the Supreme Court said, well, that doesn't mean it's clearly established. It means that there's a case here and a case there. But qualified immunity protects all but the totally incompetent and those who knowingly violate the law. So how does that help you here? Well, I could be uncharitable to the defendants and say that it was a totally incompetent decision to distribute a test like this to third graders. I don't want to be necessarily that uncharitable. But I do think Hamlin should have stepped in and said that you don't do this to an 8-year-old. The woman who gave the test is supposed to be a child psychologist. In fact, she hadn't yet completed her degrees. But she herself should have had training that exposure to this kind of material can be harmful to children, even at her stage of education. There's a school psychologist who was fully licensed, employed by the school district. He should have stepped in and said this is not appropriate to distribute to 8th graders. The school principal should have had the gut feeling that this is just not something you do to third graders. And why aren't those all State law claims instead of Federal claims? I think they are State law claims also, of course. But they're Federal claims because we're getting back to the Meyer-Pierce right. We're getting back to the school interposing its judgment on top of the parents' judgment. Well, the cases that you rely on all give the parents rights. But basically, their right is to provide a different education than the public school might provide. There's no case that says that I'm aware that the parents have a right to put their children in public school and then override what the school does. Where do you get that right? Well, you're talking about curriculum there, Your Honor. You're talking about curriculum or non-curriculum. Is there a case that says there are cases I understand that say you want to give your child a different kind of education. You want to keep your child at home and educated. You want to put it in a private school. You want it to have other courses. Nobody can deprive you of that right. The State can't interfere with it. But what cases have it says if you put your child in a public school, you then have a right, constitutional right, to prevent the public school from doing whatever it wants? Meyer and Pierce, you have the right to control the direction and upbringing of your children. What do you do by taking your child out of public school, keeping the child at home? But where is there a case that says while your child is in public school, you may compel the school to follow your judgment rather than its? Curriculum or non-curriculum? That's the extension of the law that we're looking for here. We're only asking for it in a non-curricular setting. I'm not arguing that the school cannot set a curriculum. I'm not arguing that school can't teach sex education. I'm not arguing that the school has to pick and choose for each student based on some cafeteria plan for each family's moral or religious beliefs. But I am saying that this particular subject, by virtue of its very sensitive nature, deserves special protection. Why would it make a difference whether it was curricular or non-curricular? If the subject of sex education is so sensitive that it involves the constitutional right of the parent to override the school, what difference does it make whether it's part of the curriculum or its extracurricular? Because the curricular sex education is already regulated by statute. Well, it may be in California. It may not be in Nevada. I have no idea. But, I mean, for the constitutional purposes, you either have a right, regardless of the state statute, to override the school as far as sex education is concerned, or you don't. Well, I think you do have that right. I think you do have that right. And so that would apply to the curriculum as well as to extracurricular or non-curricular. As far as I'm aware, Your Honor, from my survey of the statutes, the subject of sex education is regulated by statute everywhere it's taught. There's no state that I've looked at, and I've looked at the last 37 states preparing for the case, that doesn't have some kind of notice. That's why I thought there must be others, because I noticed you said that there were 37 that did it. I was unable to find any statutes for the remaining 13 states that – well, 14. The District of Columbia is one that has it. For the remaining 14 states that don't seem to have anything on the books one way or another about sex education. All right. Why does that make any difference in terms of the constitutional analysis, though? The fact that the state regulates sex education is not necessarily relevant to your claim, is it? It is for the purpose of demonstrating that this is a clearly established right. This is something that the states recognize. This is something that politicians and parents and school administrators recognize as a sensitive area. This is something where they already know they have to give deference to parents in parental judgment. That's why it's relevant. All right. I think we'll – we've given you extra time already, but we'll also give you a rebuttal, so. Okay. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Dennis Walsh. I represent the Palmdale School District on this matter. Can you speak up a little bit, please? Absolutely. In fact, usually that's the last thing anybody ever has to tell me, so that's not a problem, Your Honor. I'm going to echo some of the sentiments that I've heard from the Court so far and try to stay a little bit. You wouldn't echo some of the other sentiments that we might have. Well, that may be true. Like how any school district could be so dumb as to give this – do this kind of a survey. Well, Your Honor, I'm not going to sit here and try to defend the facts of this case from that perspective. And I would agree with you that probably – That's a wise choice. Because, you know, it really doesn't have any real relevance to the constitutional issues that we're here to talk about. And I don't think that the manner in which it was done or the content defines whether a liberty interest rises to the level of a constitutional magnitude. And, you know, I quote a number of these cases that say, And that's exactly what I think the attorneys in this case are doing. They're asking this Court to create new law. Because, quite frankly, if you review all of the decisions since Meyer Pierce, the only case I've seen that deals with parental rights to control education since then, in the 70 years since those two cases, is the one that I've seen. cases have been around is the Alfonso case. That's the only one that even touches upon a violation of the 14th Amendment by stating that the parental right, the liberty interest to raise your children, rises to a constitutional magnitude. And, quite frankly, that case has been disagreed with across the board. There's several cases that have said there's a Philadelphia case, 978, FEDSUP, and 197, that ruled exactly the opposite way and said that the distribution of condoms is not protected by the 14th Amendment. The Brown case basically says that we disagree with that holding and says that the Court's holding specifically distinguished from talk or literature on the subject of sexual behavior, which is clearly what we have here. There's another case, Curtis v. School Committee of Falmouth, a Massachusetts case, that says that they disagree with the Alfonso Court's ruling. There hasn't been a circuit court of appeal ruling that says Alfonso's good law. And that's the only case the plaintiff has that suggests that this type of issue that he's brought rises to the level of that magnitude. And I echo what the Court said about Meyer-Pierce. Meyer-Pierce is a whole different circumstance. It's choosing whether or not you can be compelled to do something with your child, compelled to go to public school as opposed to private school, compelled to be taught German versus not. This is not a compulsion case. Even on the face of the complaint, the students were not compelled to participate in the survey. Not every student was mandated to participate. Well, according to your argument, though, it wouldn't make any difference, would it? No, it wouldn't, because we don't get to. And your argument is that as I understand your argument, and I may be wrong, but in reading your brief, you claim that there simply isn't a constitutional right, that the right's stopped once the choice is made and it doesn't make any difference whether it's curricular or non-curricular, right?  So the fact is, if I understand the extension of your argument, if the school required the students to fill out the survey and did not ask for consent, you think that passes constitutional muster? Yes, I do. We're talking about two things. First, do we get to a liberty interest? And then assuming we get to a liberty interest, would there in fact be a substantive due process violation? I think the compulsion argument goes to even if you got that far, there wouldn't be a substantive due process violation. So I agree with what you're saying, Your Honor. No, I'm just asking the question. I'm not asserting anything. But, I mean, you started by saying that the children were not compelled to do anything. And it seems to me, if I take your argument correctly, that fact doesn't make any difference to your argument. It made to theirs. It's not even clear that that's true. So the children certainly didn't didn't know what they were given these questionnaires. Their parents were asked for consent without telling them what this was about. And then the children were called into class at what, eight years old. And they're given a form. I don't know how much free choice they exercised at that point. But as James Thomas says, it really doesn't matter for purposes of your constitutional argument. And there are non-curricular cases. I don't understand counsel's argument that all of the cases focus on curriculum issue. We've cited numerous cases in our brief. Dress code, for example, has nothing to do with curriculum. And the courts have found that doesn't rise to the level of constitutional magnitude. In fact, there was another recent dress code case that came out that basically says that, you know, the plaintiffs offer no explanation why legislative action or school board action is not ill-equipped to handle the question of dress code. And I think that applies here. The reason we have all these opt-out laws under California law, if there's any relationship, if you will, between State law and constitutional rights, is I presume that most of the States have recognized there is no Federal constitutional right that the parents have to delve into these matters. So the States have created an avenue by which the parents, if they want to object to certain issues, and they're not limited to curriculum. You know, the California Education Code applies to assemblies and literature. I've had cases involving a school assembly which was not part of the curriculum where parents have said, you know, they weren't informed by the opt-out provision, and that's covered by the Education Code. So I think the 37 States have recognized that there is no Federal constitutional right that the parents have in the school arena once their kids are in public school to address any of the issues regarding sensitive issues, whether it's curriculum-based or non-curriculum-based. And I think the case law that we've cited here goes back to that. State religious education in the public school, there might be a violation of the students' rights and maybe of the parents' rights. There might even be a violation with the Pledge of Allegiance, possibly. Yes, there might. But I think they're not based on the 14th Amendment. No, that's right. I think there are other constitutional rights that do apply to and protect the parents and the children in the public schools. The question is only in this case whether it's a substantive due process right. And I agree, Your Honor. I didn't mean to suggest otherwise. No, no, you weren't. I was just adding that to the mix. It might even be a question of if students were compelled to provide certain answers in school, there might be a privacy invasion, but not necessarily a substantive due process invasion. And I, again, concur with the Court's view on the qualified immunity. And I think we raised that argument at the district court level as well. The fact that we're here on a matter that appears to be one of first impression not only in this jurisdiction, but probably in the country, since there's no reported case even close to these facts anywhere that's been cited to the Court, I don't know how they can get around qualified immunity or, you know, the 11th Amendment, I think, is unequivocal in terms of the district court. In qualified immunity, though, you assume the facts as alleged by the plaintiff to be true. And that's that. And then, secondly, you look to see if there's a constitutional right involved. Now, assuming the facts to be true here, then it's a question of whether there's a constitutional right involved. And I think you have to – there are situations, I think, that might involve a constitutional right that could happen in the school. Suppose, again, as Judge Reinhart mentioned, the religious rights. Suppose there were 10 Jehovah Witnesses in a school, and the teacher had a special hour for religious teaching. And in that hour, they taught that Jehovah Witnesses were not really truly Americans because of the fact that they believed differently than the Christians that attended the classroom. And they were compelled to go to such a class. Would that not be a question of constitutional infringement? I think in your situation, though, for purposes of qualified immunity, we'd be hard-pressed to argue that's not a clearly established right that the officials should know about in exercising whatever conduct they're exercising, unlike this case, where I don't think there really is any indication of any clearly established right at the time the conduct was directed by the officials. And that's where I see the distinction, and maybe the Court disagrees with me. I see I'm pretty close to being out of time. Are there any other questions of the Court? I have one on the Eleventh Amendment, if you don't mind. I recognize our case law is fairly strong in California, but it strikes me that since Belanger was decided that we've had some alterations in the way California is funded and managed its finances. Who pays the judgment in this case, if there is one? Are you insured, self-insured? Can you tell me? I know it's not in the record. Well, for purposes of this case, the district is self-insured. So it's district money. It's not a traditional insurance policy. And does that get reimbursed by the state or not? No. Well, that's a good question that I don't know the answer to, to be honest with you, Your Honor. But I think the Kirchman case versus Lake Elsinore, which my firm at one time or another, not myself, handled, I think makes this pretty clear in terms of where the courts are with respect to the district's immunity. And I don't think there's been any sort of... Not in California, but California is unique. And every other state within the Ninth, maybe excepting Hawaii, we allow direct suits. And what I see happening, just as an observation, is that school districts pick and choose whether they want to be in federal court or not. The Los Angeles Unified District often doesn't bother to assert Eleventh Amendment immunity because they'd rather be in federal court for whatever reason. And in examining the school financing and how it's developed in California since the early cases, I'm not entirely persuaded that the factual basis on which we afforded California special treatment is necessarily the same. It's just an observation. I don't see there's... It's a 12B6. It's not in the facts of this case. But I only raise that because you're here and I thought you might have a response. And I guess the only aside to that is I typically, I always raise the immunity in Eleventh Amendment for my clients because I think, you know, I don't make that decision based on strategy. I make it based on the law. And in this particular case, if the Court affirms the district court ruling, I presume we're going to be back in State court arguing whether or not there was a violation of the Ed Code provision. So the plaintiffs are not going to be left remedyless and the district doesn't have, or the district itself does not have any specific immunities to that extent. Certainly, the individuals would under California State law, which we addressed, but I don't really think was at issue before this Court in terms of the State claims. Thank you, counsel. Thank you very much for your time and your questions. I think we're just about done, Your Honor. There's only two real points that I want to bring back to the Court's attention in rebuttal. The first is to emphasize that this is not just a substantive due process case. We have presented alternative theories both under substantive due process and under privacy. I didn't see any difference in your theories in your brief. It seemed to me that you were saying that your privacy claim was your substantive due process claim. The substance of the claim is the same because the violation would be the same. The origin of those rights is a little bit different. Substantive due process comes strictly from the 14th Amendment and the privacy right comes from a variety of other principles found in the Constitution. Looking for penumbras? Yes, penumbras. I like the penumbral theory myself. Well, I thought the privacy right you were alleging here was really a substantive due process right. I suppose I won't be able to persuade you of that one way or another, but we have presented alternative theories. Well, you mentioned both labels, but as you explained what they were, I mean, the privacy right is found in substantive due process, at least the basic one that we used to these days is part of substantive due process as I understand it. And I didn't see, I looked in your brief to see whether you were making a different kind of argument that you might have if the suit had been for the invasion of the children's rights, you know, by asking them for that information, whether that was an intrusion into their privacy to ask about their sex experiences. But it seemed to be very clear from your briefs and the way this case has been presented that you are not raising that issue. You're just raising the substantive due process issue. We have not represented the children's rights before the court one way or the other, Your Honor. That is true. The children debatably have rights under various Federal laws like FERPA or the PPRA. Well, sure. I think the problem, though, is that the privacy rights of invading the child's parental right to control education. And I tend to read the briefs the same way, unless you can correct me, that the privacy rights that you're arguing today are really derivative of the Myers-Pierce line of authority. And that's somewhat different from, well, it's completely different from invading the rights of privacy that the child might have, it seems to me. The primary privacy case that I'd point you to would be Roberts v. J.C.'s. Yeah. And that puts the right of intimate association firmly within the realm of the Federal privacy right. And this test interferes with the right of intimate association that is part and parcel. I don't know. What does that mean in this case? What intimate association are you talking about? Being a family. Being a parent. All right. But that brings you back to the parent's right to control the child's education. I mean, it's a totally different privacy argument. You could have made, and I'm not saying you should have, but I'm just trying to find out what the issues are. The totally different argument you could have made is that the State is intruding into matters that are personal, private, that they have no right to intrude into to compel children to give answers to these things. That's another case, another day. Right. I haven't brought that claim before this Court. Those are the rights of the children. Right. And my clients have specifically said they don't want to make their children be plaintiffs and drag them any further into this. So there is no real difference, no difference between when you say you're bringing a substantive due process claim and a privacy claim. That's one single claim, basically one single argument, one single theory, whether you label it privacy or due process. I'm pointing out to the Court that there are potentially two different sources of constitutional derivation of the right. All right. The other thing that I'd point out was a point that I raised earlier. This is what it is to be a parent. If a parent cannot control when and how their children are exposed to sexually explicit material as part of their upbringing, what is being a parent? What is the meaning of that? You disagreed that the parent can't if it's part of the curriculum. Because they have the ability to know beforehand and the ability to opt out. That is the right that we are asking for. That is all that we are asking for. We're not saying they can't teach it. We're not saying that they can't make the information available. But we are saying that the parents have the right to opt out. But the parent's right is completely dependent on what the state or the school district or whatever decides the rules should be. It's not a constitutional right. You're saying your rights to opt out of sex education in a curriculum are given to you by the state rules, whether the school district did it, the legislature did it, whoever did it. No. I'm saying that. You're not saying that it's given to you by the Constitution. I am saying it's given to you by the Constitution. I thought you distinguished between curriculum and non-curriculum. And we're only claiming there's a constitutional violation if it's not the curriculum. In this case, that's correct because we're dealing with a non-curricular issue that isn't regulated by any statute and doesn't survive constitutional analysis. I think that makes a very difficult situation for any school teacher to have approval of the parents as to what they're going to teach. And if you had a geography teacher who one day in class said, I'm going to show you the film Rwanda. And it had obviously a lot of violence in it and so forth. And the parents got home and said, well, we don't let our children watch TV. We don't let our children go to movies. Too much violence going on. Could they object? No, I think that would fall within the line of the grand discretion to the school that the Alfonso case draws. That's that's education. And that's not something you're distinguishing. Alfonso. No, I'm following Alfonso. Well, you're talking about all the cases that are distinguished. How about all the cases that have distinguished Alfonso and say they aren't going to follow it? They got it wrong. I'm asking you to get it right. Okay. Thank you very much. Thank you both very much. Thank you for a very helpful, interesting argument. Case just argued will be submitted. And the next case on the calendar.
judges: Lay , Reinhardt, Thomas